IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PERSONALIZED MEDIA
COMMUNICATIONS, LLC,

                Plaintiff,

v.                                           Civil Action No. 13-1608-RGA

AMAZON.COM, INC., AMAZON WEB
SERVICES, LLC

                Defendants.

MEMORANDUM OPINION

Edmond D. Johnson, Esq., James G. McMillan, III, Esq., Pepper Hamilton LLP, Wilmington, DE; Henry C. Bunsow, Esq., Brian A.E. Smith, Esq., Dino Hadzibegovic, Esq., Bunsow, De Mory, Smith & Allison LLP, San Francisco, CA; Denise M. De Mory, Esq., Christina M. Finn, Esq., Bunsow, De Mory, Smith & Allison LLP, Redwood City, CA, attorneys for Plaintiff Personalized Media Communications, LLC.

Richard L. Horwitz, Esq., David E. Moore, Esq., Bindu A. Palapura, Esq., Potter Anderson & Corroon LLP, Wilmington, DE; Joseph R. Re, Esq., Joseph S. Cianfrani, Esq., Kent N. Shum, Esq., Jeremy A. Anapol, Esq., Knobbe, Martens, Olson & Bear, LLP, Irvine, CA; Colin B. Heideman, Esq., Knobbe, Martens, Olson & Bear, LLP, Seattle, WA, attorneys for Defendants Amazon.com, Inc. and Amazon Web Services, LLC.

August 1𝑉 , 2015


**ANDREWS, U.S. DISTRICT JUDGE**:

Presently before the Court is Defendants' Motion for Judgment on the Pleadings. (D.I. 86). The matter has been fully briefed. (D.I. 87, 103, 106, 134, 138). The Court heard oral argument on February 27, 2015. For the reasons discussed herein, Defendants' motion is **GRANTED**.

## BACKGROUND

Plaintiff Personalized Media Company filed this patent infringement action on September 23, 2013. (D.I. 1). Plaintiff alleged that Amazon.com, Inc. and Amazon Web Services LLC infringed U.S. Patent Nos. 7,769,170 ("the '170 patent"), 5,887,243 ("the '243 patent"), 7,883,252 ("the '252 patent"), 7,801,304 ("the '304 patent"), 7,827,587 ("the '587 patent"), 7,805,749 ("the '749 patent"), 8,046,791 ("the '791 patent"), 7,940,931 ("the '931 patent"), and 7,864,956 ("the '956 patent"). (*Id.*). On July 21, 2014, the parties stipulated to dismissal of the claims with respect to the '170 patent and the '931 patent. (D.I. 57).

All of the patents are entitled "Signal processing apparatus and methods." (D.I. 1 at 4-5). The patents are directed to "the use of control and information signals embedded in electronic media content to generate output for display that is personalized and relevant to a user." (*Id.* at 3).

## LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *See Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). The court must accept the factual allegations in the complaint and take them in the light most favorable to

1

the non-moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). "[U]pon cross motions for judgment on the pleadings, the court must assume the truth of both parties' pleadings." 61A Am. Jur. 2d Pleading § 555; *cf. Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) ("On cross-motions for summary judgment, the court construes facts and draws inferences 'in favor of the party against whom the motion under consideration is made.'"). "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must "draw on its judicial experience and common sense" to make the determination. *See id.*

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability: laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293-94 (quotation marks and emphasis omitted). The Supreme Court has made clear that "to transform an unpatentable law of nature into a patent-eligible application of

2

such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* for distinguishing "patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original); *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("[T]he court must first 'identify and define whatever fundamental concept appears wrapped up in the claim.' Then, proceeding with the preemption analysis, the balance of the claim is evaluated to determine whether 'additional substantive limitations . . . narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself.'" (internal citation omitted)).

Furthermore, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or adding insignificant postsolution activity." *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010) (internal quotation marks omitted). In addition, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

3

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law
. . . ." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561
U.S. 593 (2010). The Federal Circuit has held that the district court is not required to
individually address claims not asserted or identified by the non-moving party, so long as the
court identifies a representative claim and "all the claims are substantially similar and linked to
the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat.
Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted). For the
purpose of this motion, Plaintiff's proposed claim constructions are adopted. (D.I. 120).

## ANALYSIS

A.    The '243 Patent

Claim 13 is representative and reads:

13. A method of providing data of interest to a receiver station from a first remote data source, said data of interest for use at said receiver station in at least one of generating and outputting a receiver specific datum, said method comprising the steps of:

> storing said data at said first remote data source;
>
> receiving at said remote data source a query from said receiver station;
>
> transmitting at least a portion of said data from said first remote data source to said receiver station in response to said step of receiving said query, said receiver station selecting and storing said transmitted at least a portion of said data and;
>
> transmitting from a second remote source to said receiver station a signal which controls said receiver station to select and process an instruct signal which is effective at said receiver station to coordinate presentation of said at least a portion of said data with one of a mass medium program and a program segment presentation sequence.

Defendants argue that claim 13 claims the abstract idea of combining information from
multiple sources. (D.I. 138 at p. 15). Defendants maintain that the method is no different than
generating a vehicle advertisement for a local dealership: combining information from a national
source, such as a manufacturer (the "mass medium programming") with user-specific data, such

4

as the address of a local dealer (the user-specific "data of interest"). (Tr. 21-22). Defendants further argue that the claim does not have an inventive concept because limiting the type of data being combined is no more than a field of use limitation. (D.I. 138 at p. 16).

Plaintiff responds that the claim is not directed to an abstract idea, but rather to a method of providing data of interest to a receiver station from a first remote data source, the receiver station combining the data of interest with mass media programming to generate a coordinated presentation. (Tr. 44, 46-47). Plaintiff argues that there is more than just combining data, because it involves combining mass media programming with user-specific information and creating a coordinated presentation. (*Id.* at 45-46).

Plaintiff also argues that claim 13 supplies an inventive concept. (D.I. 134 at p. 17). As of the priority date of the patent, Plaintiff argues that programming could either be delivered as (1) one-to-many distribution or (2) one-to-one distribution. (*Id.*). Plaintiff maintains that "the patent introduced a new method by which to provide receiver specific data with mass media programming via a coordinated presentation." (*Id.*). Plaintiff also argues that the patent does not preempt combining information from multiple sources. (Tr. 29-50; D.I. 103 at pp. 12-13).

I find that claim 13 of the '243 patent is directed to the abstract idea of using personal information to create a customized presentation. Creating a coordinated presentation using user-specific information is similar to a claim recently held patent-ineligible by the Federal Circuit. The patent at issue there related to "customizing webpage content as a function of navigation history and information known about the user." *Intellectual Ventures I LLC, et al v. Capital One Financial*, 2015 WL 4068798, at 10 (Fed. Cir. July 6, 2015) ("*Intellectual Ventures I*"). The Federal Circuit held,

> This sort of information tailoring is a fundamental practice long prevalent in our system. There is no dispute that newspaper inserts had often been tailored based on information known about the customer—for example, a newspaper might advertise based on the customer's location. Providing this minimal tailoring—e.g., providing different newspaper inserts based on the location of the individual—is an abstract idea.

*Id.* at 11 (citations and alterations omitted). The abstract idea here is the same: it customizes a mass media program, such as the website in *Intellectual Ventures I*, using stored personal information.

Turning to the second step of *Alice*, I do not think that the claim provides an inventive concept sufficient to render it patent eligible. That the method was a new means of transmitting information is not relevant to the § 101 analysis. "The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981); *see Ultramercial, Inc*, 772 F.3d at 714-15 ("We do not agree with Ultramercial that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete.").

In addition, I do not think that the claim satisfies the second prong of the § 101 analysis merely because it does not preempt the idea of combining information. "[A]lthough courts have framed the "second-step" analysis in terms of preemption, there is no rule that ideas that do not preempt an entire field are *per se* patent eligible." *Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*, 2015 WL 436160, at *5 (D. Del. Jan. 27, 2015).

The '243 patent claims the abstract idea of using personal information to create a customized presentation and lacks an inventive concept. It is not patent eligible.

B.  The '252 Patent

Claim 1 is representative and reads:

6

1. A method of reprogramming a receiver station, said receiver station including a programmable device of a specific version having a memory, a signal detector, and a receiver operatively connected to said signal detector, said method comprising the steps of:

    storing information specifying said specific version of said programmable device, wherein said specific version indicates a version of an operating system executing on said programmable device and controlling the processing capabilities of said programmable device;

    receiving an information transmission at said receiver, said information transmission including a control signal which designates a designated version of programmable device;

    passing said information transmission to said signal detector and detecting said control signal;

    determining whether said specific version is said designated version in response to said control signal;

    communicating operating system instructions to said memory only when said step of determining determines that said specific version is said designated version, wherein said communicating comprises erasing any operating system instructions stored within an erasable portion of said memory and then storing said communicated operating system instructions within said erasable portion of said memory; and

    executing said communicated operating system instructions to control operation of said programmable device.

Defendants argue that the '252 patent is directed to the abstract idea of updating operating system instructions. (D.I. 138 at p. 12). They note that this Court has held that "distributing software updates to a computer" is an abstract idea. (*Id.* (citing *Intellectual Ventures I, LLC v. Motorola Mobility LLC*, 2015 WL 846532, at *7 (D. Del. Feb. 24, 2015) ("*Intellectual Ventures*"))). Defendants argue that the claim is essentially a computerized version of receiving a new copy of the Federal Rules and replacing the old one. (Tr. 23). Defendants maintain that there is nothing to add an inventive concept, as the "control signal"

Plaintiff identifies as a meaningful limitation is itself both abstract and conventional. (D.I. 138 at p. 13).

Plaintiff maintains that the patent comprises patent-eligible subject matter. (D.I. 103 at p. 16). Plaintiff argues that the patent is directed to a very specific process of updating operating instructions: it is done remotely, and only after the new version is compared to the old version. (*Id.*). Plaintiff also argues that claim 1 supplies an inventive concept. (*Id.* at p. 17). Specifically, the "control signal" element limits the claim to instances where a control signal is received and triggers the update. (*Id.*). Plaintiff argues that the claim does not preempt all methods of updating operating instructions and is a technological improvement. (*Id.*).

I do not agree that the patent claims a very specific method of updating operating instructions. The method seems quite generic. It involves only checking a receiver station to see if it has the current operating instructions, and, if it does not, updating them. Other than the fact that the method is implemented on a computer, it is no different from checking to see if a copy of the Federal Rules is up to date, and, if it is not, replacing it with a new one. "Steps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent-eligibility." *Intellectual Ventures I*, 2015 WL 4068798, at 14. Plaintiff claims that the patent does not preempt all methods of updating operating instructions, but it seems to me it does preempt all methods of doing so remotely. Nor does the inclusion of a control signal make the claim patent eligible. The Federal Circuit has held that signals are not directed to patent-eligible subject matter. *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014).

The '252 patent claims the abstract idea of updating operating instructions and lacks an inventive concept. It is not patent eligible.

8

C.   The '304 Patent

Claim 1 of the '304 patent is representative and reads:

1. A method for controlling the decryption of programming at a subscriber station, said method comprising the steps of:

   receiving programming, said programming having a first encrypted digital control signal portion and an encrypted digital information portion;

   detecting said first encrypted digital control signal portion of said programming;

   passing said first encrypted digital control signal portion of said programming to a decryptor at said subscriber station;

   decrypting said first encrypted digital control signal portion of said programming using said decryptor at said subscriber station;

   passing said encrypted digital information portion of said programming to said decryptor;

   decrypting said encrypted digital information portion of said programming using said decryptor at said subscriber station based on the decrypted control signal portion; and

   presenting said programming.

Defendants argue that the '304 patent claims the abstract idea of decryption. (D.I. 138 at p. 8). Defendants maintain that decryption is merely converting information from one format to another, which the Supreme Court has held is abstract. (*Id.* (citing *Gottschalk v. Benson*, 409 U.S. 63, 67-68 (1972) (holding that converting binary numbers to binary coded decimals is abstract))). Defendants argue that, other than the abstract idea of decryption, the claim adds only conventional computer functions and generic computer components. (D.I. 87 at p. 18).

Plaintiff argues that Defendants ignore the purpose of the patent, which is to decrypt programming to control access to content. (D.I. 134 at p. 9). Plaintiff maintains that the patent is directed to a specific means of decryption, not the abstract idea of decryption. (*Id.* at pp. 9-10). Plaintiff also argues that the asserted claims add an inventive concept. (*Id.* at 10). In 1981, the conventional means of restricting access to programming was analog descrambling, not

9

encryption. (*Id.*). Plaintiff argues that claim 1 differs from that conventional practice by instead using encryption. (*Id.*). In addition, Plaintiff contends that the claim differs from existing encryption schemes because it recites "double encryption, not generic encryption." (*Id.*; Tr. 65-66). Plaintiff further argues that the claim does not preempt all decryption techniques. (Tr. 66).

I agree with Defendants that the claim recites the abstract idea of decryption. The claim involves receiving an encrypted control signal and encrypted information, decrypting the control signal, using the signal to decrypt the information, and then presenting programing. "Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." *Digitech*, 758 F.3d at 1351. I think the claim here is similar to that in *Digitech*: some decryption algorithm is used to convert the encrypted signal into a decrypted signal. That decryption occurs twice does not make it any less abstract. In addition, it is irrelevant to the § 101 analysis that decryption is used to protect programming content; field of use limitations cannot render a claim patent eligible. *Mayo*, 132 S. Ct. at 1301.

There is no inventive concept to render the abstract idea patent eligible. Cryptography has been used to protect information since ancient Mesopotamia. Double encryption is similarly not inventive; it has been in practice since the Cold War.[1] Even if that were not so, performing an abstract idea twice in a row is not a meaningful limitation. Plaintiff's argument that using encryption to control content is inventive because, at the time, scrambling was the primary means of controlling content goes to novelty. Practicing an abstract idea in a novel

---

[1] Michael Kilian, *50-year Secret: How U.S. Broke Soviet A-bomb Spies' Codes*, CHICAGO TRIBUNE, July 12, 1995.

10

way is still practicing an abstract idea. In addition, while there is no question that preemption is an important policy concern underlying patent eligibility, whether the claim preempts all decryption is not the test for patent eligibility.

The '304 patent claims the abstract idea of decryption and lacks an inventive concept. It is not patent eligible.

D.   The '587 Patent

Claim 9 of the '587 patent reads:

> 9. A method of processing signals in a network including:
>   receiving at a transmitter station in said network an information transmission from a remote station, said transmission including incomplete processor instructions;
>
>   receiving at said transmitter station a control signal;
>
>   detecting at said transmitter station said incomplete processor instructions and said control signal and passing said incomplete processor instructions and said control signal to a computer in said transmitter station;
>
>   storing said incomplete processor instructions in said computer;
>
>   generating information to complete said incomplete processor instructions by processing, at said computer, information stored in said computer based on said control signal, wherein said stored information is not part of said transmission;
>
>   completing, at said computer, said incomplete processor instructions by placing said generated information into said passed and stored incomplete processor instructions; and
>
>   communicating to a processor in a receiver station in said network at least a first portion of said completed processor instructions based on a second portion of said completed processor instructions.

Defendants argue that claim 9 recites the abstract idea of completing partial instructions. (D.I. 138 at p. 18). Defendants contend that the '587 patent would preempt "every instance in which a computer in a network receives incomplete instructions, completes those instructions in any way based on any information (the 'control signal') received from any source, and sends the completed instructions to another computer." (*Id.* (emphasis omitted)).

11

Plaintiff maintains that the claim is not directed to an abstract idea because "the claim is focused on generating, at the transmitter station, information to complete the incomplete instructions using information stored at the transmitter station . . . ." (D.I. 134 at p. 18). Plaintiff also argues that the claim supplies an inventive concept because it is an improved technological process that allows for the generation of personalized content for users. (*Id.* at p. 19).

Plaintiff's argument that the claim is not directed to an abstract idea merely spells out how the abstract idea of completing partial instructions is performed on a computer, which "cannot confer patent-eligibility." *Intellectual Ventures I*, 2015 WL 4068798, at 14. Nor is there an inventive concept. Nothing in the claim speaks to personalized content. Even if it did, tailoring processor instructions based on device-specific information is no different than customizing content based on user information. As discussed above, that is a long prevalent, fundamental practice.

The Federal Circuit has held that "a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." *Digitech*, 758 F.3d at 1351. That is precisely what the '587 patent does. There is also a significant preemption concern. Claim 9 does not recite any limitations but generic computer components, so the patent preempts every instance of one computer completing instructions received from another.

The '587 patent claims the abstract idea of completing partial instructions and lacks an inventive concept. It is not patent eligible.

E.     The '749 Patent

Claim 2 is representative and reads:

2. A method for mass medium programming promotion and delivery for use with an interactive video viewing apparatus comprising the steps of:

> receiving a first portion of said mass medium programming in a first programming signal, said first portion of mass medium programming including a video image that promotes a second portion of said mass medium programming;
>
> displaying said video image, said interactive video viewing apparatus having an input device to receive input from a subscriber;
>
> prompting said subscriber for a reply, during said step of displaying said video image, as to whether said subscriber wants said second portion of said mass medium programming promoted in said step of displaying of said video image, said interactive video viewing apparatus having a transmitter for communicating said reply to a remote site;
>
> receiving said reply from said subscriber at said input device in response to said step of prompting said subscriber, said interactive video viewing apparatus having a processor for processing said reply;
>
> processing said reply and selecting at least one of a code and a datum designating said second portion of said mass medium programming to authorize delivery of said second portion of said mass medium programming;
>
> communicating said selected at least one of a code and a datum to a remote site;
>
> receiving said second portion of said mass medium programming in a second programming signal;
>
> decrypting said second portion of said mass medium programming by using said at least one of a code and a datum in response to said step of processing said reply; and
>
> delivering said mass medium programming to an output device.

Defendants argue that the claim is directed to the abstract idea of cross-selling. (Tr. 19). Defendants maintain that the claimed method is virtually identical to the one the Federal Circuit found was not patent eligible in *Ultramercial*. (*Id.*). In that case, the Federal Circuit found that a method of delivering copyrighted programming where a user must select and view an advertisement was an abstract idea. *Ultramercial*, 772 F.3d. at 715. Defendants further argue that there are no additional limitations to render the claim patent eligible. (D.I. 138 at p. 11).

Plaintiff argues that the claim is not directed to cross-selling. (D.I. 103 at p. 13). Plaintiff states, "Claim 2 shows a concrete application of video display, promotion, selection,

13

authorization, and decryption that is not fairly described as an 'abstract idea,' much less the abstract idea of 'cross-selling.'" (*Id.* at pp. 13-14). In addition, Plaintiff argues that the patent is an improved technological process. In particular, Plaintiff identifies decryption and user interaction as meaningful limitations. (D.I. 134 at p. 12; Tr. 56-57).

*Ultramercial* is apposite here and makes clear that this claim is not patent eligible. As the court there stated,

> This ordered combination of steps recites an abstraction—an idea, having no particular concrete or tangible form. The process of receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad all describe an abstract idea, devoid of a concrete or tangible application.

*Ultramercial*, 772 F.3d. at 715. The claim at issue here is even more abstract. The first portion of programming—construed by Plaintiff to mean "everything that is transmitted electronically to entertain, instruct, or inform, including television, radio, broadcast print, and computer programming as well as combined medium programming, designed for multiple recipients"—is not limited to advertisements; it can be anything that promotes programming.

There is no inventive concept. As discussed above, decryption is itself abstract and not a meaningful limitation. User interaction is also insufficient to render the claim patent eligible. *See id.* at 716 ("[T]hat the system is active, rather than passive, and restricts public access also represents only insignificant pre-solution activity . . . .") (internal quotations and alterations omitted).

The '749 patent claims the abstract idea of promoting programming and lacks an inventive concept. It is not patent eligible.

F. The '791 Patent

Claim 18 reads:

14

18. A method of controlling a receiver station, comprising:

storing information about a user of said receiver station at a memory of said receiver station;

receiving, at said receiver station, a first computer program transmitted from a transmitter station;

storing said first computer program in memory at said receiver station;

executing said first computer program using a processor at said receiver station to generate an order for a product by processing said information about a user of said receiver station;

receiving, at said receiver station, a second computer program transmitted from a said transmitter station;

storing said second computer program in memory at said receiver station; and

executing said second computer program using said processor, which causes said receiver station to communicate said order for a product to a remote station.

Defendants argue that the patent claims the abstract idea of providing instructions for ordering. (D.I. 138 at p. 13). Defendants maintain that the claim is a computerized version of ordering from a catalogue. (Tr. 18). Defendants further argue that the only additional limitations are generic computer components. (*Id.* at 18-19).

Plaintiff responds that the patent is directed at controlling a receiver station, not providing instructions for ordering. (D.I. 134 at p. 15). Plaintiff states, "Claim 18 is not abstract—it is not directed toward a 'fundamental economic practice,' 'law of nature,' or 'mathematical formula.'" (D.I. 103 at p. 15). Plaintiff further argues that the claim contains meaningful limitations because it requires receiving two separate computer programs from a transmitter station and then executing each of those programs. (*Id.* at p. 16).

I agree with Defendant that the claim is abstract and provides no inventive concept. Without the generic computer and network components, the method consists of (1) receiving instructions for completing an order and instructions for sending the order, (2) adding personal information to the order, and (3) sending the order per the instructions provided. This has long

15

been done with a pencil and paper. Plaintiff's argument with respect to the abstract idea is semantic. Controlling the station that receives instructions for ordering is no less abstract than providing the instructions. The claim here does nothing more than apply the abstract idea to the Internet. In addition, the preemption concern is enormous. Plaintiff contends that the patent is infringed essentially every time a purchase is made over the Internet. (D.I. 138 at p. 15).

The '791 patent claims the abstract idea of receiving instructions for ordering and lacks an inventive concept. It is not patent eligible.

G. The '956 Patent

Claim 6 is representative and reads:

6. A method of signal processing in a network to communicate at least some of a recommendation or solution to a plurality of subscribers, said method comprising the steps of:

   transmitting a signal to at least one of a plurality of stations;

   controlling a transmitter station on the basis of information communicated with said signal, said step of controlling said transmitter station comprising the steps of:

   selecting some generally applicable information in respect of a problem or interest;

   generating at least a portion of a module including said selected generally applicable information; and

   transmitting said module with at least a portion of said signal;

   controlling each of a plurality of receiver stations on the basis of information communicated with said signal, said step of controlling each of said plurality of receiver stations comprising the steps of:

   selecting some portion of said module;

   communicating receiver specific information to an output device; and

   recommending in outputted video, audio, or print subscriber specific action in respect to said problem or interest; and

   controlling at least one of said plurality of receiver stations on the basis of information communicated with said signal, said step of controlling said at least one receiver station comprising the steps of:

16

>>>inputting to a processor some data communicated with at least one of said signal and said module;

>>>causing said at least one receiver station to establish communications with a remote station; and

>>>communicating input to said remote station.

Defendants argue that this claim is directed to the abstract idea of providing personalized recommendations. (D.I. 87 at p. 19). Defendants maintain that the claim is no different from verbally providing recommendations based on general information. (Tr. 27). For example, Defendants contend that the claim is the same as giving advice on what to wear based on the weather. (*Id.*). Defendants further argue that there is no inventive concept. (D.I. 138 at p. 19).

Plaintiff argues that the claim is not abstract because "the purpose of claim 6 of the '956 patent is to make recommendations to a plurality of subscribers within a network of transmitter and receiver stations—not simply recommendations in general." (D.I. 134 at p. 20). Plaintiff maintains that the claim is directed to an embodiment described in the specification, wherein a recommendation is made to a farmer based on a combination of general information and farmer-specific information. (Tr. 67). Plaintiff also argues that the claim supplies an inventive concept because "a network of transmitter and receiver stations that provide subscriber-specific recommendations to numerous subscribers was certainly not conventional technology [as of the priority date]." (D.I. 134 at p. 20).

Claim 6 of the '956 patent is clearly abstract. Plaintiff's embodiment from the specification demonstrates the abstraction. The claim is no different than the Department of Agriculture providing advice on what farmers should grow. Plaintiff argues that it is different because the recommendations are generated simultaneously to multiple users, but that does not make the idea less abstract. (*See* Tr. 69). It is merely a consequence of performing the method on a computer. The improved speed or efficiency inherent with applying an abstract idea on a

computer does not provide an inventive concept. *Intellectual Ventures I*, 2015 WL 4068798, at 12. The limitations Plaintiff identifies also cannot provide an inventive concept. The network of transmitter and receiver stations is a generic computer component. In addition, supplying recommendations to multiple subscribers is part of the abstract idea.

The '956 patent claims the abstract idea of providing personalized recommendations and lacks an inventive concept. It is not patent eligible.

## CONCLUSION

For the reasons discussed herein, Defendants' Motion for Judgment on the Pleadings (D.I. 86) is **GRANTED**. An appropriate order will be entered.